Matthew Borden, Esq. (SBN: 214323)
  borden@braunhagey.com
David H. Kwasniewski, Esq. (SBN: 281985)
  kwasniewski@braunhagey.com
Tracy O. Zinsou, Esq. (SBN: 295458)
  zinsou@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 599-0210

ATTORNEYS FOR DEFENDANTS
IT WORKS MARKETING, INC.,
IT WORKS! GLOBAL, INC.,
MARK PENTECOST, AND PAUL NASSIF

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AILEEN BROOKS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IT WORKS MARKETING, INC., IT WORKS! GLOBAL, INC., MARK PENTECOST, and PAUL NASSIF,<br><br>Defendants. | Case No: 1:21-cv-01341-DAD-BAK (SKO)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS**<br><br>**Date:** June 21, 2022<br>**Time:** 9:30 a.m.<br>**Judge:** The Hon. Dale A. Drozd<br><br>**Complaint Filed:** September 3, 2021 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 21, 2022 at 9:30 a.m. or as soon thereafter as the matter may be heard before the Honorable Dale A. Drozd, in the United States District Court for the Eastern District of California at the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, CA 93721, Defendants It Works Marketing, Inc., It Works! Global, Inc., Mark Pentecost, and Paul Nassif (collectively, "Defendants") will, and hereby do, move the Court for sanctions pursuant to Federal Rule of Civil Procedure 11.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the files and records in this action, and on such other written and oral argument as may be presented to the Court.

Dated:  May 19, 2022                                    Respectfully submitted,

                                                                                    BRAUNHAGEY & BORDEN LLP

                                                                                    By:   */s/ David Kwasniewski*
                                                                                            David Kwasniewski

*Attorneys for Defendants*
*It Works Marketing, Inc.,*
*It Works! Global, Inc.,*
*Mark Pentecost, and Paul Nassif*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................. 2

    A.    The Complaint ........................................................................................................ 2

    B.    The First Amended Complaint .............................................................................. 3

    C.    Plaintiff's Declaration ............................................................................................ 3

    D.    Plaintiff's Lawyer's Declaration ............................................................................ 4

    E.    Plaintiff's Motion for a Preliminary Injunction .................................................... 5

ARGUMENT ............................................................................................................................ 5

I.    THIS CASE IS FRIVOLOUS ...................................................................................... 6

    A.    This Case Is Predicated on the False Statement that Plaintiff Bought ThermoFight in Reliance on the It Works! Website ............................................ 6

        1.    The Complaint Is Premised on the False Allegation that Plaintiff Visited the It Works! Website ................................................................... 7

        2.    A Reasonable Lawyer Would Have Investigated Whether His Client Visited the Website Prior to Filing a Lawsuit Based Entirely on Her Review of and Use of the Website ........................................................... 7

        3.    Plaintiff's Lawyer Did Not Correct the False Allegations after Learning that Plaintiff Did Not Visit the Website .................................... 8

    B.    The FAC Is Also Objectively Baseless Because No Reasonable Lawyer Could Believe that His Client Could Sue over Representations She Never Relied on .............................................................................................................. 10

    C.    Plaintiff Compounded Her Rule 11 Violations by Filing for a "Preliminary Injunction" ............................................................................................................ 11

II.    THIS ACTION WAS FILED FOR AN IMPROPER PURPOSE ................................. 12

III.    PLAINTIFF AND HER LAWYER SHOULD BE REQUIRED TO PAY DEFENDANTS' LEGAL FEES AND COSTS ........................................................... 14

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) .................................................................................................. 5

*Galvan v. Walt Disney Parks and Resorts, U.S., Inc.*,
  2019 WL 8017806 (C.D. Cal. Dec. 20, 2019) ........................................................................... 7

*Gen. Teamsters Loc. #439*,
  2022 WL 88480 (E.D. Cal. 2022) ........................................................................................ 6, 11

*Holgate v. Baldwin*,
  425 F.3d 671 (9th Cir. 2005) ..................................................................................................... 5

*In re Ferrero Litig.*,
  794 F. Supp. 2d 1107 (S.D. Cal. 2011) ................................................................................... 10

*In re Yagman*,
  796 F.2d 1165 (9th Cir. 1985) ................................................................................................. 14

*Lubin v. Sybedon Corp.*,
  688 F. Supp. 1425 (S.D. Cal. 1988) .......................................................................................... 8

*Martinez v. West Sacramento*,
  No. 2:16-cv-02566-TLN-JDP, 2021 WL 2227830 (E.D. Cal. June 2, 2021) ...................... 9, 10

*Mitchel v. City of Santa Rosa*,
  601 F. App'x 466 (9th Cir. 2015) ............................................................................................ 14

*Moore v. Chase, Inc.*,
  No. 1:14-CV-01178-SKO, 2016 WL 928671 (E.D. Cal. Mar. 10, 2016) ................................. 6

*O'Brien v. Alexander*,
  898 F. Supp. 162 (S.D.N.Y. 1995) .......................................................................................... 12

*Peviani v. Natural Balance Inc.*,
  2011 WL 1648952 (S.D. Cal. May 2, 2011) ..................................................................... 10, 13

*Portnoy v. Veolia Transp. Servs.*, Inc.,
  No. 2:13-CV-00043-MCE-EF, 2014 WL 3689366 (E.D. Cal. July 24, 2014) ........................ 14

*Red v. Kraft Foods, Inc.*,
  2011 WL 4599833 (C.D. Cal. Sept. 29, 2011) ........................................................................ 13

*Red v. Unilever PLC*,
   2010 WL 3629689 (N.D. Cal. Sept. 14, 2010) .......................................................................... 13

*Regents of Univ. of California on behalf of UC Davis Health Sys. v. Stidham Trucking Inc.*,
   No. 16-CV-02835-MCE-CKD, 2018 WL 338998 (E.D. Cal. Jan. 8, 2018) ............................... 14

*Ringgold v. Brown*,
   No. 2:12-CV-00717-JAM-JFM, 2013 WL 268940 (E.D. Cal. Jan. 23, 2013) ............................. 6

*Stewart v. Electrolux Home Prod., Inc.*,
   2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) .......................................................................... 10

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1990) .................................................................................................... 6

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .............................................................................................................. 10

*Weston Firm, P.C. v. Reese Richman LLP*,
   2010 WL 11684859 (S.D. Cal. Sept. 30, 2010) ........................................................................ 13

**STATUTES**

Cal. Bus. & Prof. Code §§ 17200 ..................................................................................................... 10
Cal. Bus. & Prof. Code §§ 17500 ..................................................................................................... 10

**RULES**

Federal Rule of Civil Procedure 11 ............................................................................................ passim

Defendants It Works Marketing, Inc., It Works! Global, Inc., Mark Pentecost, and Paul Nassif (collectively, "Defendants") respectfully submit this Memorandum in support of their Motion for Sanctions against Plaintiff Aileen Brooks and her lawyer Gregory S. Weston.

**INTRODUCTION**

In this false advertising case, Plaintiff recently testified that she never saw the ads over which she is suing. Her testimony reveals that this lawsuit and all the proceedings that have followed violate Rule 11 because this case's core factual premise—that Plaintiff was supposedly misled by the advertising and terms on the It Works! website—is undisputedly false. This case never should have been filed because minimal investigation, *i.e.*, talking to the client about the most fundamental fact in the case, would have revealed that the claims have no possibility of success.

Plaintiff makes three claims, all of which turn on her visiting the It Works! website. Her Complaint claimed that she bought an It Works! product because she read and relied on statements on the website. (Dkt. 1 ¶¶ 18, 19, 99, 100.) It alleged that she was victimized by the Terms of Use on the website and by the website's renewal policy. (*Id.* ¶¶ 68-84.) Yet in a declaration she later submitted to the Court, Plaintiff admitted that she never visited the website. (Dkt. 18 ¶¶ 2-5.)

Instead of dismissing the case after it came to light that Plaintiff never visited the website, Plaintiff's lawyer compounded his Rule 11 violations by submitting an amended complaint that contained the same false factual allegations and same baseless legal theories. He further urged the Court to rely on his false allegations, moved for a "preliminary injunction," and submitted a false declaration himself.

The foregoing conduct violates all three prongs of Rule 11. The pleading contains false allegations of fact. The claims have, at all times, been objectively frivolous, and this action was brought, maintained, and vexatiously multiplied for a wrongful purpose. Plaintiff's lawyer moved for a "preliminary injunction" on behalf of his uninjured plaintiff in an effort to increase the burden and expense of this case, and has insisted upon maintaining claims against individuals that he does not even claim were involved in making or marketing the product Plaintiff bought. Plaintiff's lawyer has a lengthy history, documented by many federal judges, of filing cases on behalf of

uninjured clients who were obviously not misled, filing cases on behalf of plaintiffs who did not consume the products at issue, and making frivolous and sanctionable filings. There have also been reports, noted by federal jurists, that he has paid kickbacks to individuals to act as plaintiffs to threaten and bring supposed "class action" claims. The only reason to clog up the most overworked court system in the Ninth Circuit with a putative "class action" on behalf of an uninjured plaintiff whom her lawyer did not even interview is to extort money.

Plaintiff's violations of Rule 11 have forced It Works! to incur significant costs defending this action. Under Rule 11, Plaintiff, her lawyer, or both should bear those costs. To date, It Works! has incurred $283,857.77 in reasonable attorney's fees and costs in responding to Plaintiff's objectively unreasonable lawsuit. Plaintiff and her lawyer should be required to pay for all the needless expenses they have caused through violating Rule 11 and needlessly multiplying this case.

## FACTUAL BACKGROUND

**A.     The Complaint**

Plaintiff filed this action on September 3, 2021, alleging that she sustained an injury from buying ThermoFight X$^x$ ("ThermoFight") from the It Works! website. (Dkt. 1.) Plaintiff alleged that she purchased the product "from the It Works website on May 11, 2020" (*id.* ¶ 18) and that she "read and relied on" representations made "on Defendants' website and the efficacy messages they conveyed, which were substantial factors in her purchase" (*id.* ¶ 99).

The Complaint further alleged that Plaintiff suffered a separate injury because she was taken advantage of by the renewal policy on the It Works! website. (*Id.* ¶¶ 82–84.) The Complaint devoted 30 paragraphs to its allegations about Plaintiff supposedly being misled by the website's renewal policy. It specifically alleged that Plaintiff agreed to the renewal policy when she made her purchase through "what appear[ed] to be a normal online retail checkout" and that Plaintiff, in making her purchases, enrolled in the "auto-shipment program" without realizing it. (*Id.* ¶¶ 55, 57.) It further alleged: "In Ms. Brooks [sic] case, she was required to call Defendants' customer service department in order to cancel her auto-renewal." (*Id.* ¶ 84.)

The Complaint also named Dr. Paul Nassif as a defendant. The Complaint alleged that Dr. Nassif, a board-certified reconstructive surgeon, "developed several products" without alleging whether Dr. Nassif developed ThermoFight, the only product that Plaintiff bought or otherwise took any action related to the subject matter of this litigation. (*Id.* ¶ 17.) Plaintiff also alleged that "Nassif's former wife was one of the 'Real Housewives of Beverly Hills[,]'" a fact that is also irrelevant to this litigation. (*Id.* ¶ 16.)

### B. The First Amended Complaint

On November 8, 2021, Plaintiff filed the First Amended Complaint ("FAC"). In the FAC, Plaintiff alleged that she purchased ThermoFight "from an independent distributor using the It Works website." (Dkt. 17 ¶ 77.) The FAC alleged that Plaintiff had "read and relied on" representations made "by It Works on Defendants' website and the efficacy messages they conveyed, which were substantial factors in her purchase." (*Id.* ¶¶ 78, 256.) Plaintiff further alleged in the FAC that she read and "relied on the reviews posted on the It Works' Thermofight product page," which is contained on the It Works! website (*id.* ¶ 257). According to the FAC, ThermoFight is the only It Works! product that Plaintiff purchased. (*Id.* ¶¶ 77-81.)

The FAC also added allegations regarding Dr. Nassif, asserting that he "partnered with It Works! to create a line of skincare products bearing his name, including It Works!/Dr. Nassif Enhancing Lash & Brow Serum, It Works!/Dr. Nassif Firming Neck Treatment, and It Works!/Dr. Nassif Illuminating Facial Pads. (*Id.* ¶ 65.) These new allegations did not assert that Plaintiff ever purchased the Enhancing Lash & Brow Serum, Firming Neck Treatment, or Illuminating Facial Pads, much less that she was somehow misled by the products. Plaintiff still did not allege that Dr. Nassif participated in developing or marketing ThermoFight.

### C. Plaintiff's Declaration

On November 23, 2021, Plaintiff submitted a declaration in opposition to Defendants' Motion to Compel Arbitration. (Dkt. 18-1.) It stated that she "did not view Defendants' website at all." (*Id*. ¶ 4.) Plaintiff's Declaration contradicted key factual allegations in the Complaint and FAC. For example:

Paragraph 18 of the Complaint alleged that "Plaintiff Aileen Brooks purchased Thermofight from the It Works Website on May 11, 2020." Paragraph 4 of Plaintiff's Declaration, however, states: "In making my initial Thermofight purchase, I did not view Defendants' website at all." (Dkt. 18-1 ¶ 4.)

Plaintiff's Declaration also contradicts the factual allegations in the FAC. Paragraph 256 of the FAC alleges that "Plaintiff read and relied on, for her Thermofight purchase, the product's packaging and the misrepresentations made by It Works on Defendants' website and the efficacy messages they conveyed, which were substantial factors in her purchase." This allegation contradicts Plaintiff's sworn statement that she did not view the It Works! website. Plaintiff's allegation in Paragraph 257 of the FAC, where she claims that she relied on the product reviews posted on the It Works! website, is similarly inconsistent. (FAC ¶ 257 ["Plaintiff further relied on the reviews posted on It Works' Thermofight product page, many of which were fake or altered."].)

Further, since Plaintiff had not seen the It Works! website (the only place where It Works! advertises), she could not have read and relied on any of the statements cited in, and attached to, her pleadings, *e.g.*, FAC pages 15-16 (describing statements about ThermoFight on the It Works! website), Exhibit 1 (printout from the It Works! website), Exhibit 4 (Loyal Customer Agreement from the It Works! website), Exhibit 5 (Product Information from the It Works! website).

Likewise, without visiting the website, Plaintiff could not have been misled by the website's renewal policy. The FAC, however, contains 315 paragraphs, spans 113 pages, contains sections entitled "It Works Website" (pages 20-22, 27-28), "Misleading Webpage Claims" (pages 34-35, 37-38), "Misleading Product Information Page Claims" (pages 29-31, 32-34, 35-36), and contains 33 paragraphs making various allegations about the website's renewal policy (FAC ¶¶ 185-218), which include assertions that the agreement is "[h]idden within what appears to be a normal online retail checkout." (*Id.* ¶187.)

### D. Plaintiff's Lawyer's Declaration

On December 15, 2021, Plaintiff's lawyer submitted a declaration in support of Plaintiff's Proposed Sur-Reply in Opposition to Motion to Compel Arbitration. (Dkt. 20-1 at 14-15 ("Weston Decl.").) In this declaration, Plaintiff's lawyer attempted to explain why the Complaint he signed

contained false statements about Plaintiff reading and relying on the It Works! website. Waiving privilege, he claimed that prior to filing the Complaint, "we" only asked Plaintiff "if she purchased Thermofight at a retail store or online, and she let us know that she purchased it online." (*Id.* ¶ 2.) Plaintiff's lawyer did not state that he (or whoever talked to her) asked any other questions of his client prior to filing the Complaint.[1] Nor did Plaintiff or her lawyer state that Plaintiff had ever reviewed the Complaint prior to its filing.

In the declaration, Plaintiff's lawyer stated that once he learned that Plaintiff had supposedly purchased ThermoFight "indirectly through a website she never herself saw, we put this information into an amended complaint." (*Id.* ¶ 7.) But as seen above, that statement is inconsistent with the FAC, which alleges, *inter alia*, "Plaintiff further relied on the reviews posted on It Works' Thermofight product page, many of which were fake or altered." (FAC ¶ 257.)

Additionally, the FAC contains hundreds of paragraphs devoted to the It Works! website, and still contains claims about the Terms of Use and renewal policy being concealed from Plaintiff because they are purportedly difficult to see or access. (*See* Section C, above.) Plaintiff's lawyer added many of these allegations when he amended the Complaint (*e.g.*, ¶¶ 185-239). And he amended the pleading to include these allegations ***after*** he claims to have learned that Plaintiff had never seen the It Works! website. (Weston Decl. ¶ 7.)

### E.   Plaintiff's Motion for a Preliminary Injunction

After admittedly knowing that Plaintiff had never visited the It Works! website, Plaintiff filed a motion for a preliminary injunction, claiming that Plaintiff was likely to suffer immediate and irreparable future harm. (Dkt. 22-1 at 14.) The motion repeatedly claims the It Works! website's renewal policy and Terms of Use as sources of ongoing harm.

### ARGUMENT

When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent

---

[1] Additionally, ThermoFight is not sold in any retail store. (Declaration of Timothy Seat ("Seat Decl." ¶ 2.) Plaintiff's lawyer does not explain why he believed Plaintiff might have purchased Thermofight at a store.

inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)).

## I. THIS CASE IS FRIVOLOUS

Rule 11 provides, in pertinent part:

> By presenting to the Court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).

This lawsuit violates Rule 11 because (i) the pleadings have at all times contained admittedly false statements, (ii) absent the false allegations in the pleading, Plaintiff does not have a legally cognizable claim, and (iii) this case was filed for an improper purpose. *Ringgold v. Brown*, No. 2:12-CV-00717-JAM-JFM, 2013 WL 268940, at *4 (E.D. Cal. Jan. 23, 2013) (granting sanctions for the filing of a frivolous complaint and ordering an award for attorney's fees related to the action and the Rule 11 motion). A filing that is "both baseless and made without a reasonable and competent inquiry" is frivolous. *Gen. Teamsters Loc. #439*, 2022 WL 88480 at *6 (citing *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)). "The subjective intent of the pleader or movant to file a meritorious document is irrelevant;" rather the standard under Rule 11 is one of objective "reasonableness." *Moore v. Chase, Inc.*, No. 1:14-CV-01178-SKO, 2016 WL 928671, at *4 (E.D. Cal. Mar. 10, 2016).

### A. This Case Is Predicated on the False Statement that Plaintiff Bought ThermoFight in Reliance on the It Works! Website

Both the Complaint and the FAC are constructed upon the false factual allegation that Plaintiff visited the It Works! website. Plaintiff's use of the It Works! website is a necessary

factual predicate for Plaintiff to sue It Works! for supposed injuries resulting from advertising on the website and the website's Terms of Use and renewal policy. Plaintiff's lawyer made these false allegations without reasonable inquiry and did not withdraw them once his client submitted a declaration testifying to this fact.

### 1. The Complaint Is Premised on the False Allegation that Plaintiff Visited the It Works! Website

The predicate of this entire lawsuit is that Plaintiff visited the It Works! website. Her main claim is that she was misled into purchasing ThermoFight based on the advertising she saw. Her Complaint specifically alleges that she made her purchase "from the It Works website" and that she "read and relied on" the marketing statements made on It Works! website. (Compl. ¶¶ 18, 19, 99, 100.) Plaintiff's other claims are premised on the theory that features of the It Works! website—the website's Terms of Use and renewal policy—constitute fraudulent and unlawful business practices that supposedly injured Plaintiff.

Plaintiff submitted a declaration admitting that she never visited the It Works! website. (E.g., Dkt. 18-1 at ¶ 4 ("In making my initial Thermofight purchase, I did not view Defendants' website at all").) Her declaration negates her case. It was objectively unreasonable to include such false allegations in a complaint and further unreasonable to reiterate these allegations in an amended pleading that Plaintiff filed *after* she admitted that she had not visited the website.

### 2. A Reasonable Lawyer Would Have Investigated Whether His Client Visited the Website Prior to Filing a Lawsuit Based Entirely on Her Review of and Use of the Website

Rule 11 requires a lawyer to perform a reasonable investigation before making a factual representation to the Court. *Galvan v. Walt Disney Parks and Resorts, U.S., Inc.*, 2019 WL 8017806, at *2 (C.D. Cal. Dec. 20, 2019) (finding that plaintiffs' counsel failed to conduct a competent inquiry where he failed to "confer with his clients about their purported cognitive disabilities and/or challenges in performing major life functions prior to filing a complaint making specific allegations regarding those topics"). A reasonable lawyer would have, at minimum, asked his client whether or not she visited the It Works! website before alleging that she did in a pleading.

The duty to investigate is even more important when the fact at issue is the foundational one for the entire lawsuit. The sine qua non of a false advertising case is what the plaintiff supposedly saw, where she saw it, when she saw it, what the advertising meant to her, and how she was supposedly misled. *Brownfield v. Bayer Corp.*, No. 2:09-cv-00444-JAM-GGH, 2009 WL 1953035 *4 (E.D. Cal. July 6, 2009) (where plaintiffs "have not alleged any facts showing they viewed either of the Ads at issue prior to [their purchase] or that they purchased [the product] in reliance on the challenged aspect of the Ads and were injured as a result" dismissal was required because plaintiffs lacked standing and failed to state a claim). Failing to ask these basic questions before publicizing claims against a small business and dragging it into litigation is objectively unreasonable.

Plaintiff's lawyer's failure to investigate was all the more profound given that all her claims were predicated on her visiting the It Works! website. For example, Plaintiff alleged that she was injured because terms were supposedly "[h]idden within what appears to be a normal online retail checkout[.]" (Compl. ¶ 55.) A reasonable lawyer would at least ask his client whether she had seen anything about renewals when she visited the website. Plaintiff's interactions with the website form the basis of all her other alleged remaining injuries. Under these circumstances, failure to ask about these interactions is objectively unreasonable.

It was separately objectively unreasonable for Plaintiff—who knew that she had not visited the website—not to read the Complaint before it was filed. *See Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1462 (S.D. Cal. 1988) (finding class representative was inadequate when he had an "'alarming unfamiliarity with the suit'" and had "never read or seen either the original complaint or the amended complaint"). Had she done so, she would have caught the false allegations in the pleading and corrected them.

### 3. Plaintiff's Lawyer Did Not Correct the False Allegations after Learning that Plaintiff Did Not Visit the Website

Plaintiff's lawyer has stated under oath that after he supposedly learned for the first time that his client had never visited the It Works! website, he attempted to "correct" this issue by filing

the FAC.  (Dkt. 20-1 at 14–15.)  But since visiting the website is the linchpin of all Plaintiff's claims, there is no way to "fix" any of the claims, as detailed in Section B, below.

Leaving aside the impossibility of amending the complaint to state a claim, the FAC continues to falsely allege that Plaintiff "read and relied" on representations on the It Works! website.  (FAC ¶¶ 78, 256, 257.)  More fundamentally, Plaintiff could not have read and relied on virtually any of the statements cited in, and attached to, the FAC, *e.g.*, FAC pages 15-16 (describing statements about ThermoFight on the It Works! website), Exhibit 1 (printout from the It Works! website), Exhibit 4 (Loyal Customer Agreement from the It Works! website), Exhibit 5 (Product Information from the It Works! website).  And without visiting the website, Plaintiff cannot have been misled by the website's renewal policy or Terms of Use.

Doubling down on a false allegation is separately sanctionable.  *See Martinez v. West Sacramento*, No. 2:16-cv-02566-TLN-JDP, 2021 WL 2227830 (E.D. Cal. June 2, 2021).  In that case, plaintiff's lawyer filed an amended complaint accusing various state officials of providing false testimony and fabricated evidence in a prior criminal proceeding.  Plaintiff's lawyer filed the amended complaint despite having received from the defendants "undisputed evidence" that those allegations were untrue.  The court held that under these circumstances, Rule 11 sanctions were warranted.  The court held that what mattered was not whether plaintiff's lawyer had performed any investigation prior to filing the amended complaint, but instead whether he engaged in "that amount of examination into the facts and legal research which is reasonable under all the circumstances of a case." *Id.* (cleaned up).  Because the amended complaint "at best, ignored the substantial amount of evidence" showing that the allegations "were not well-founded[,]" the court concluded plaintiff's lawyer "failed to perform his duty under Rule 11 to validate the truth and legal reasonableness of the papers filed and to conduct a reasonable and competent inquiry into all available information before signing and filing the [amended complaint]." *Id.*

This case presents similar facts: Plaintiff's lawyer filed the Complaint without asking if his client ever visited the website; and then filed the FAC containing virtually identical allegations even after his client told him (and signed a sworn declaration to this effect) that she never visited

the website. No "competent attorney" would have signed and filed the FAC given the "undisputed evidence" that Plaintiff never visited the website. *See id.*

### B. The FAC Is Also Objectively Baseless Because No Reasonable Lawyer Could Believe that His Client Could Sue over Representations She Never Relied on

This case is objectively unreasonable because no reasonable lawyer could believe that a client who did not read or rely on any of the representations claimed to be misleading could state a claim. To proceed in federal court, a plaintiff must have standing for each claim they seek to assert. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Having not visited the website, Plaintiff could not have suffered any injury as a result of the advertising on the website, or the renewal policy or Terms of Use, which were supposedly hidden from Plaintiff when she visited the website. *Id.* ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.") This renders all of Plaintiff's claims objectively frivolous.

Separately, Plaintiff purports to assert claims under the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq*.), the California False Advertising Law ("FAL") (Cal Bus. & Prof. Code §§ 17500, *et seq*.), and the California Consumer Legal Remedies Act ("CLRA") (Cal. Civ. & Prof. Code §§ 1750, *et seq*.). (FAC ¶¶ 281-314.) The UCL, FAL, and CLRA "have independent requirements for standing, which mandate allegations of actual reliance." *Stewart v. Electrolux Home Prod., Inc.*, 2018 WL 1784273, *4 (E.D. Cal. Apr. 13, 2018). An individual that did not actually read or rely on representations cannot bring claims arising from those representations under the UCL, FAL, or CLRA. *See In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1111 (S.D. Cal. 2011) (finding failure to state a claim under UCL, FAL, and CLRA where plaintiffs alleged reliance on Nutella's labels and advertising, but admit they never personally visited the Nutella website). These requirements are well known to Plaintiff's lawyer. *Peviani v. Natural Balance Inc.*, 2011 WL 1648952 at *3 (S.D. Cal. May 2, 2011) (dismissing case filed by Plaintiff's lawyer because plaintiff had not consumed product at issue).

It is objectively unreasonable to believe that Plaintiff has any viable claims given her admission that she has never visited the It Works! website. The foundation of Plaintiff's claims is that she read and relied on representations on the It Works! website and that those representations

were substantial factors in her purchase. (FAC ¶¶ 77, 78, 256, 257.) Plaintiff alleges that she purchased the It Works! product at issue "based on the product's deceptive labeling and website." (FAC ¶ 258.) Plaintiff could not have seen the label prior to buying the product because the product is only sold on the It Works! website. (Seat Decl. ¶ 2.) Plaintiff's theory of injury thus hinges entirely on her visiting the It Works! website and being supposedly misled by representations therein.

It is likewise objectively unreasonable to believe that Plaintiff has any viable claims arising from It Works! Terms of Use or Auto-Renewal policies. Since Plaintiff never visited the website, she could not have been misled by these agreements or suffered any injury from these agreements

Plaintiff's claims against Dr. Nassif similarly lack any legal basis. The It Works! products that Dr. Nassif developed are unrelated to ThermoFight and Plaintiff never bought any products in the Dr. Nassif Collection. Plaintiff thus does not have standing to pursue any claims against Dr. Nassif. Plaintiff has failed to allege any actions undertaken specifically by Dr. Nassif that would give rise to liability under the UCL, FAL, or CLRA. In fact, Plaintiff has failed to articulate any connection whatsoever between Dr. Nassif and her purchase of ThermoFight.

Where, as here, a complaint is filed by an attorney who knew or should have known the claims could not succeed, Rule 11 sanctions are warranted. *Gen. Teamsters*, 2022 WL 88480 at *7 (issuing Rule 11 sanctions against plaintiff and attorney who filed a frivolous complaint when a review of publicly available records would have shown that the claims lacked merit). Plaintiff has no basis—neither legally nor factually—of asserting claims under the UCL, FAL, or CLRA given that she never read or relied on representations on the It Works! website.

### C. Plaintiff Compounded Her Rule 11 Violations by Filing for a "Preliminary Injunction"

Once Plaintiff's lawyer learned that Plaintiff never visited the It Works! website, he was under a Rule 11 obligation to withdraw the Complaint. Rather than withdraw the Complaint, Plaintiff's lawyer doubled down with an amended complaint that was replete with knowingly false allegations, which for the reasons above is a separate Rule 11 violation. Plaintiff and her lawyer compounded this violation by then asking the Court to rely on her false FAC by seeking a

preliminary injunction. (Dkt. 22.) This is separately sanctionable. *O'Brien v. Alexander*, 898 F. Supp. 162, 176 (S.D.N.Y. 1995) (asking the Court to rely on knowingly false allegations violates Rule 11).

## II. THIS ACTION WAS FILED FOR AN IMPROPER PURPOSE

Courts find improper purpose where a plaintiff has been informed of the falsity of his or her claims, but insists upon maintaining them anyway. *See Townsend*, 914 F.2d at 1144. Moreover, Plaintiff's lawyer has been reprimanded for a wide variety of misconduct before the courts of the Ninth Circuit. For example, Plaintiff's lawyer has been sanctioned by the Ninth Circuit for filing a frivolous appeal in *Walker v. B&G Foods, Inc.*, No. 16-15349, ECF No. 16 (9th Cir. July 20, 2016) (slip op.). He has a lengthy, documented history of repeatedly filing the same putative "class action" claims on behalf of the same recycled plaintiffs, including at least the following matters:

- Plaintiff Adam Perez: *Perez v. Costco Wholesale Corp.*, No. 13-cv-1687 (S.D. Cal.); *Perez v. The J.M. Smucker Co.*, No. 12-cv-00853 (S.D. Cal.).
- Plaintiff Mary Henderson: *Henderson v. Gruma*, 10-cv-04173-AHM-AJW (C.D. Cal.); *Henderson v. the J.M. Smucker Co.*, No. 10-cv-04525 (C.D. Cal.).
- Plaintiff Troy Backus: *Backus v. Gen. Mills, Inc.*, No. 15-cv-01963 (N.D. Cal.); *Backus v. Nestle USA, Inc.*, No. 15-cv-01963-MMC (N.D. Cal.); *Backus v. Conagra Foods*, C 16-00454 WHA (N.D. Cal.); *Backus v. Biscomerica Corp.*, No. 16-cv-3916-HSG (N.D. Cal.)
- Plaintiff Victor Guttmann: *Chacanaca v. The Quaker Oats Co.*, No. C 10-502 RS (N.D. Cal.); *Peivani v. Hostess Brands, Inc.*, No. 10-cv-2303 (C.D. Cal.); *Guttmann v. Ole Mexican Foods, Inc.*, No. C 14-04845 (N.D. Cal.); *Guttmann v. La Tapatia Tortilleria, Inc.*, No. C 15-2042 SI (N.D. Cal.); *Guttmann v. Nissin Foods (U.S.A.) Co.*, C 15-00567 WHA (N.D. Cal.)
- Plaintiffs Mark and Maxine Beasley: *Beasley v. Conagra Brands, Inc.*, 18-cv-06730-SI (N.D. Cal.); *Beasley v. Tootsie Roll Indus., Inc.*, 4:18-cv-07724-YGR (N.D. Cal.); *Beasley v. Lucky Stores, Inc.*, 3:18-cv-07144 (N.D. Cal.); *Beasley v. Subco Foods, Inc.*, 19-CIV-03681 (Cal. Super. Ct., San Mateo Cty.)
- Plaintiff Shavonda Hawkins: *Hawkins v. AdvancePierre Foods, Inc.* (S.D. Cal. 3:15-cv-02309); *Hawkins v. Kroger Co.*, 3:15-cv-02320-JM-BLM (S.D. Cal.); *Hawkins v. Kellogg Co.*, No. 3:16-cv-00147 (S.D. Cal.).
- Plaintiffs Tiffini and Steve Altes: *Altes v. Conagra Brands*, 2:19-cv-03952 (C.D. Cal.); *Greenbrier Int'l, Inc.*, 2:19cv03011 (C.D. Cal.); *Altes v. Star Brands N. Am., Inc.*, 2:19-cv-04399 (C.D. Cal.).

Plaintiff's lawyer's various misuse of the legal process has earned him repeated admonishments from other district courts. The Honorable George Wu in the Central District of California held:

> The Weston Firm's former co-counsel testified under oath that Mr. Weston had (1) offered a "kickback" to an employee's roommate in return for serving as a named plaintiff in a class action; (2) promised a "finder's fee" to his employee in return for "signing up" her roommate as a named plaintiff; and (3) agreed to compensate the firm's non-lawyer employees with settlement proceeds on a percentage basis.

*Red v. Kraft Foods, Inc.*, 2011 WL 4599833 *14 (C.D. Cal. Sept. 29, 2011). The court further noted "The Weston Firm's having been reprimanded by three different federal judges in 2010" and that the Honorable James Ware refused to approve a settlement on the grounds that "The Weston Firm had not 'done all that they can do in the interest of the class.'" *Id.*; *see also Red v. Kraft Foods, Inc.*, No. 10-cv-1028-GW (AGRx) (C.D. Ca. Apr. 29, 2015), ECF No. 356 (reducing fee petition submitted by the Weston Firm from over $1.9 million to $11,368); *Peviani v. Natural Balance Inc.*, 2011 WL 1648952, *3 (S.D. Cal. May 2, 2011) (dismissing case filed by Plaintiff's lawyer because class representative had not consumed product at issue); *Weston Firm, P.C. v. Reese Richman LLP*, 2010 WL 11684859, *2 (S.D. Cal. Sept. 30, 2010) ("this Court is now concerned that Weston deliberately failed to mention Judge Ware's September 14th ruling in an attempt to invoke this Court's power through deception" and issuing an order to show cause as to why Mr. Weston should not be sanctioned); *Red v. Unilever PLC*, 2010 WL 3629689, *3 (N.D. Cal. Sept. 14, 2010) ("Mr. Weston's statements at the hearing raise serious concerns for the Court with respect to his ability to hold the attorney fees from the settlement in trust").

Plaintiff's naming Dr. Nassif as a defendant further highlights her improper purpose in filing this action. Plaintiff fails to allege any connection between Dr. Nassif and her purchase of ThermoFight. Plaintiff alleges that Dr. Nassif was involved in the development of three It Works! products, none of which Plaintiff ever purchased. The only possible reason that Plaintiff and her lawyer could have for personally suing Dr. Nassif is that he is a public figure. Plaintiff needlessly added allegations about Dr. Nassif's ex-wife, and her appearance in a reality television program in the FAC (FAC ¶ 35) for the sole purpose of harassing Dr. Nassif in hopes of coercing a nuisance

payment from him. These allegations have nothing to do with any claim or defense in this case. This is separately sanctionable under Rule 11(b)(1).

Further, Plaintiff has insisted upon litigating this case in the most vexatious manner possible in hopes of coercing a nuisance payment from Defendants. Despite admittedly never visiting the It Works! website and thus having no good-faith basis for filing this action, Plaintiff refused to dismiss her claims. Instead, Plaintiff filed a Motion for Preliminary Injunction while Defendants' Motion to Compel Arbitration was pending as a means of vexatiously multiplying the proceedings and thus driving up Defendants' costs to defend this action.

### III. PLAINTIFF AND HER LAWYER SHOULD BE REQUIRED TO PAY DEFENDANTS' LEGAL FEES AND COSTS

Because this case is, and always has been, frivolous, Plaintiff and her lawyer are at least liable for all the needless attorney's fees and costs imposed on Defendants in defending against this frivolous action. *Mitchel v. City of Santa Rosa*, 601 F. App'x 466, 469 (9th Cir. 2015) (proper measure of Rule 11 sanctions are those attorney fees and expenses "reasonably necessary to resist the offending action" (quoting *In re Yagman*, 796 F.2d 1165, 1185 (9th Cir. 1985)). This sanction is particularly appropriate given Mr. Weston's demonstrated history of vexatiously filing frivolous suits. *See supra* Section II; *see also Portnoy v. Veolia Transp. Servs.*, Inc., No. 2:13-CV-00043-MCE-EF, 2014 WL 3689366, at *6 (E.D. Cal. July 24, 2014) (granting a motion for sanctions and ordering payment of attorney's fees and noting need for such sanction given plaintiff's history of filing frivolous suits); *Regents of Univ. of California on behalf of UC Davis Health Sys. v. Stidham Trucking Inc.*, No. 16-CV-02835-MCE-CKD, 2018 WL 338998, at *3 (E.D. Cal. Jan. 8, 2018) (granting motion for sanctions and ordering payment of attorney's fees resulting from plaintiff's lawyer's Rule 11 violation).

Here, Defendants have been forced to incur at least $283,857.77 to date. (Declaration of David Kwasniewski in Support of Motion for Sanctions ¶¶ 4-7.) Plaintiff, her counsel, or both, should be required to pay all those fees and costs.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motion be granted in the form of the attached Proposed Order and the Court grant Defendants their attorney's fees related to this action and the Rule 11 motion in the amount of $283,857.77.

Dated: May 19, 2022

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: /s/ David Kwasniewski
David Kwasniewski

*Attorneys for Defendants*
*It Works Marketing, Inc.,*
*It Works! Global, Inc.,*
*Mark Pentecost, and Paul Nassif*