1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   AILEEN BROOKS, *on behalf of herself*          No.  1:21-cv-01341-DAD-BAK
     *and all others similarly situated*,
12
                 Plaintiff,
13                                                  ORDER DENYING PLAINTIFF'S MOTION
          v.                                        FOR A PRELIMINARY INJUNCTION AND
14                                                  PROVISIONAL CLASS CERTIFICATION
     IT WORKS MARKETING, INC., et al.,
15                                                  (Doc. No. 22)
                 Defendants.
16

17

18          This matter is before the court on a motion for a preliminary injunction and provisional

19   class certification filed on behalf of plaintiff Aileen Brooks.  (Doc. No. 22.)  Pursuant to General

20   Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, the

21   pending motion was taken under submission on the papers.  (Doc. No. 23.)  For the reasons

22   explained below, the court will deny plaintiff's motion for a preliminary injunction and

23   provisional class certification.

24                                        **BACKGROUND**

25   **A.     Factual Background**

26          This putative class action arises from plaintiff Aileen Brooks' purchase of a weight loss

27   product called Thermofight X$^x$ ("Thermofight") from defendants It Works Marketing, Inc. and It

28   Works! Global Inc. (together, "It Works!").

                                              1

1    Plaintiff, a Bakersfield resident, proceeds on her first amended class action complaint

2    ("FAC") against defendants It Works! and defendants Mark Pentecost, the It Works! founder and

3    CEO, and Paul Nassif, a plastic surgeon and reality TV star who has developed and promoted

4    products for It Works!.  (Doc. No. 17.)  In her FAC, plaintiff alleges that she purchased

5    Thermofight from an independent distributor in reliance on defendants' representations that it was

6    a safe and effective weight control product.  (*Id.* at ¶¶ 77–78.)  Despite alleging that she used

7    Thermofight as directed, plaintiff claims it did not deliver on its advertised benefits or provide

8    any results at all.  (*Id.* at ¶¶ 79–81.)  Moreover, plaintiff alleges that when making her initial

9    purchase she was enrolled in an auto-shipment program without her knowledge, which required a

10   minimum of three purchases of Thermofight (one per month).  (*Id.* at ¶¶ 200–02.)  Plaintiff

11   alleges that she was charged for two purchases of Thermofight before realizing that she had been

12   enrolled in the auto-shipment program.  (*Id.* at ¶ 204.)  Although plaintiff was able to cancel

13   future shipments over the phone, her request for a refund for the second shipment was denied.

14   (*Id.* at ¶¶ 204–05.)  Plaintiff alleges that these auto-billing practices constitute an unlawful

15   "automatic renewal" prohibited under California law.  (*Id.* at ¶ 206.)  Plaintiff does not allege that

16   she suffered any other injuries from using Thermofight.

17   Aside from her individual allegations, plaintiff is also suing on behalf of two putative

18   classes and the general public.  (*Id.* at ¶¶ 265–67, 297, 306, 310, 315.)  As detailed in her FAC,

19   plaintiff alleges that defendants, collectively, have defrauded the public by marketing,

20   distributing, and selling a suite of "unapproved weight control drugs"[1] through "an illegal multi-

21   level marketing scam," which uses "unlawful credit card repeat auto-billing practices."  (*Id.* at ¶

22   3.)  In addition, plaintiff claims that defendants' Terms of Use contract is unlawful because it

23   contains several unconscionable provisions.  (*Id.* at ¶¶ 219–39.)

24   /////

25   /////

26   ---

[1]  Aside from Thermofight, the "suite of scam weight control drugs" allegedly includes,

27   Advanced Formula Fat Fighter (Fat Fighter), Slimming Gummies, and Carb Control Dual Action
Complex (Carb Control).  (Doc. No. 17 at ¶ 19.)  Collectively, the court will refer to these four

28   products as the "weight control products."

**B.      Procedural Background**

After originally filing this lawsuit on September 3, 2021 (Doc. No. 1), plaintiff amended her complaint two months later, on November 8, 2021 (Doc. No. 17), asserting several violations of California consumer protection statutes.  (*Id.* at ¶¶ 281–314.)  Specifically, plaintiff asserts the following five claims against defendants in her operative FAC:  (1) violation of the California Unfair Competition Law's (UCL) unlawful prong; (2) violation of the UCL's fraudulent prong; (3) violation of the UCL's unfair prong; (4) violation of California's False Advertising Law (FAL); and (5) violation of California's Consumer Legal Remedies Act (CLRA).  (*See id.*)

In conjunction with these five claims, plaintiff seeks injunctive relief, including an order enjoining defendants from "continuing to conduct business through unlawful, unfair, and fraudulent acts and practices," engaging in "deceptive and unlawful advertising practices," and entering into contracts which allegedly contravene California law.  (*Id.* at ¶¶ 301, 303, 307, 312.) Plaintiff also prays for several equitable remedies, including restitution, disgorgement, and orders enjoining defendants' allegedly "deceptive, unconscionable, and fraudulent practices" and requiring that they engage in a corrective advertising campaign.  (*Id.* at ¶ 315.)

On December 21, 2021, over three and half months after initiating this lawsuit, plaintiff filed the pending motion.  (Doc. No. 22.)  In support of that motion, plaintiff filed four declarations with attached exhibits:  (i) the declaration of plaintiff's counsel, Gregory S. Weston (Doc. No. 22-2); (ii) the declaration of Nathan Wong, a professor of medicine and epidemiology at University of California, Irvine's (UCI) School of Medicine and the director of UCI's heart disease prevention program (Doc. No. 22-3); (iii) the declaration of William M. London, a professor of public health at California State University, Los Angeles (Doc. No. 22-4); and (iv) the declaration of Robert L. FitzPatrick, a co-author of two books regarding multi-level marketing (MLM) and pyramid schemes (Doc. No. 22-5).  Plaintiff, however, did not include a declaration of her own in support of the pending motion.

Defendants filed an opposition brief on January 18, 2022, arguing, among other things, that plaintiff cannot show that she is in imminent danger of suffering any irreparable injury. (Doc. No. 29 at 8.)  Plaintiff filed her reply brief on January 25, 2022, contending that she has

1   offered sufficient evidence of injury, that she seeks "public injunctive relief," and that she has no

2   adequate remedy at law.  (Doc. No. 30 at 8–13.)  In the proposed order filed with her pending

3   motion, plaintiff details the "three forms of injunctive relief" requested in her motion:  (1)

4   enjoining defendants' advertising and sale of defendants four weight control products; (2)

5   enjoining defendants' auto-billing practices; and (3) enjoining defendants' "use of exculpatory

6   contract provisions which she contends are unlawful and unconscionable waivers of unwaivable

7   rights."  (Doc. No. 22-6 at 2.)

8   **C.      Plaintiff's Evidence of Irreparable Harm**

9          In her pending motion, plaintiff contends that she, the putative classes, and "the public"

10   will suffer imminent and irreparable harm absent this court issuing preliminary injunctive relief.

11   (Doc. No. 22-1 at 22–26.)  Plaintiff alleges five such harms.  First, plaintiff asserts that promoting

12   "unapproved drugs" causes irreparable harm based on an FDA webpage where it generically lists

13   harms from "unapproved drugs."[2]  (*Id.* at 23–24.)  She included copies of FDA enforcement

14   letters sent to non-It Works! companies.  (Doc. No. 22-2 at ¶¶ 9–12.)  Second, plaintiff relies on

15   the declarations from professor of epidemiology Nathan Wong, professor of public health

16   William M. London, and author Robert L. FitzPatrick as support for additional alleged harms

17   from "unapproved drugs."  (Doc. No. 22-1 at 24.)  Professor Wong states in his declaration that a

18   specific advertising claim made by defendants regarding Thermofight—i.e., it "[c]ontains a

19   clinically proven weight-loss ingredient – an average of 31 pounds lost over 90 days!"—"lacks

20   biologic plausibility" and that in his opinion,

21

22   [2]  The link in plaintiff's brief can be found here:  https://www.fda.gov/drugs/enforcement-
     activities-fda/unapproved-drugs-and-patient-harm.  It provides that,

23

24          Unapproved drugs have many risks, including:
              • unproven and untested drug formulations with excipients and
25                other inactive ingredients that have not been reviewed by FDA
                  for safety
26            • labels and prescribing information that has not been reviewed
                  by FDA for accuracy and completeness
27            • unknown manufacturing processes
              • unexpected and undocumented safety concerns due to lack of
28                rigorous pre- and postmarket safety surveillance
              • lack of evidence the drug is effective for its intended use

> Thermofight's advertising is misleading, deceptive, and likely to channel people who purchase the product in lieu of medically proven therapies for weight loss approved by the FDA. Besides the economic loss from the costs of such a therapy of questionable benefit, continued lack of sufficient weight loss may result in the continued chronic illnesses associated with obesity.

(Doc. No. 22-3 at ¶¶ 9–10, 26.) Professor Wong also attests that "[t]hese same issues apply to" defendants remaining weight control products. (*Id.* at ¶ 26.) Similarly, plaintiff highlights the following passage from public health professor London's declaration as evidence of the purported harm stemming from defendants' weight control products':

> The amount of health harm from the kind of herbal/vitamin/mineral concoctions promoted by Defendants is largely unmeasured which means that extent of harm due to product use is unknown making it impossible to state with confidence that the amount of harm is small. Considering that none of the ingredients in the products the Defendants promote for weight loss have been shown to be efficacious in humans, the products must be viewed as potentially more harmful than beneficial.

(Doc. No. 22-4 at ¶ 10.) Author FitzPatrick's declaration, in contrast, concludes from his review of portions of the FAC, the It Works! website, and approximately 50 pages of Bates stamped documents that are not further identified in his declaration, that defendants' conduct has "serious, wide-ranging, and devasting non-economic and irreparable harms." (Doc. No. 22-5 at ¶ 7.) Although FitzPatrick does not attest that It Works! is in fact an MLM scheme, he generally attests that MLM schemes can lead to the following injuries:

> The greatest injury suffered by MLM victims are not economic. It is the blow to the soul, an injury that may be carried unhealed throughout life. It is a shock to self-esteem, trust and social capital. What makes the injury so damaging is the misuse of trusted relationship. When workplace, collegiality, friendships and family become settings for calculated deception and abuse, the fundamentals of life are altered. * * * The consequences to MLM victims of soul-injuries, for which MLM promoters have never been held accountable, may include divorces, alienation from family, lost friendships, incapacity to work, disillusionment, bankruptcies, addictions and even suicides.

(Doc. No. 22-5 at ¶¶ 8–9, 12.)

/////

/////

5

Third, plaintiff argues in her moving papers, without citing to any declaration or evidence, that "harm caused by hidden auto-billing agreements by [their] nature is irreparable" because it leads to "frustration, hassle, and confusion." (Doc. No. 22-1 at 25.)  Fourth, plaintiff claims that unconscionable and unlawful contract provisions, such as those allegedly employed by defendants in their Terms of Use, "continue to cause irreparable harm to plaintiff" because defendants' filed a motion to compel arbitration in this action.  (*Id.* at 25.)  Fifth, and finally, plaintiff generally contends that an injunction will prevent irreparable harm to the putative classes and the general public's right to a marketplace free of unapproved drugs, fraud, and unfair competition.  (*Id.*)

## LEGAL STANDARD

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'" (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).  The Ninth Circuit has also held that an "injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  *All. for the Wild Rockies*, 632 F.3d at 1134–35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (*en banc*), *overruled on other grounds by Winter*, 555 U.S. 7).[3]  The party seeking the injunction bears the burden of proof as to each of these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine Servs. Co.*

---

[3]  The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test."  *All. for the Wild Rockies*, 632 F.3d at 1134.  "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.* at 1135.

1    *v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable

2    injury sufficient to warrant granting a preliminary injunction.").  Finally, an injunction is "an

3    extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled

4    to such relief."  *Winter*, 555 U.S. at 22.

5    **ANALYSIS**

6          Plaintiff contends that she and the public will suffer irreparable harm absent this court

7    granting preliminary injunctive relief.  (Doc. Nos. 22-1 at 23–26; 30 at 10–13.)

8          The phrase "irreparable harm" is a term of art, meaning a party has suffered a wrong

9    which cannot be adequately compensated by remedies available at law, such as monetary

10    damages.  *See eBay Inc. v. Merc Exchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also E. Bay

11    Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) ("Irreparable harm is 'harm for

12    which there is no adequate legal remedy, such as an award for damages.'"); *Los Angeles

13    Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)

14    ("The possibility that adequate compensatory or other corrective relief will be available at a later

15    date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.")

16    (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).  Although it is well established that

17    monetary injuries are generally not considered irreparable, *Los Angeles Memorial Coliseum*, 634

18    F.2d at 1202, certain "intangible injuries, such as damage to ongoing recruitment efforts and

19    goodwill, [can] qualify as irreparable harm."  *Rent-A-Ctr., Inc. v. Canyon Television & Appliance

20    Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 31

21    F.4th 1180, 1188 (9th Cir. 2022) (finding evidence that business faced "'threat of 'extinction' is

22    enough to establish irreparable harm, even when damages may be available and the amount of

23    direct financial harm is ascertainable"); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240

24    F.3d 832, 841 (9th Cir. 2001) (evidence of threatened loss of prospective customers or goodwill

25    supports an irreparable harm finding).

26          Following the Supreme Court's decision in *Winter*, one moving a preliminary injunction

27    must show that irreparable harm is "likely" to occur.  *Ctr. for Food Safety*, 636 F.3d at 1172; *All.

28    for Wild Rockies*, 632 F.3d at 1131.  In this regard, a showing of a speculative injury, or mere

1   allegations of an imminent harm that would satisfy standing, are not sufficient to warrant a

2   preliminary injunction.  *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th

3   Cir. 1988); *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir.

4   1984).  Rather, a plaintiff must demonstrate that she faces a real and immediate threat of an

5   irreparable harm.  *See Caribbean Marine*, 844 F.2d at 674; *Midgett v. Tri-Cnty. Metro. Transp.

6   Dist. of Oregon*, 254 F.3d 846, 850–51 (9th Cir. 2001).  Thus, because irreparable harm must be

7   demonstrated and not merely alleged, the granting of a preliminary injunction must be based on

8   evidence showing that irreparable harm is likely.  *See Herb Reed Enters., LLC v. Florida Entm't

9   Mgmt., Inc.*, 736 F.3d 1239, 1249–51 & n.5 (9th Cir. 2013) (reversing the district court's granting

10  of preliminary injunctive relief in a trademark infringement suit because its "analysis of

11  irreparable harm is cursory and conclusory, rather than being grounded in any evidence").

12       The court concludes that plaintiff has not satisfied her burden of showing that she is likely

13  to face imminent irreparable harm absent preliminary injunctive relief.

14       Critically, plaintiff did not attest in a declaration, or provide other competent evidence,

15  showing that she faces any currently ongoing or future irreparable harm.  The declarations that

16  plaintiff did file in support of her pending motion do not address any harm that plaintiff continues

17  to or will suffer.  Instead, the declarations of Professors Wong and London and author FitzPatrick

18  only discuss possible harms that the public might face from defendants' alleged weight control

19  products, MLM business model, and auto-billing practices.  (*See* Doc. No. 22-3 at ¶¶ 9–10, 26;

20  22-4 at ¶ 10; 22-5 at ¶¶ 8–9, 12.)  But these possible harms are speculative and are not specific to

21  plaintiff.  For example, Professor Wong evaluates a single marketing claim that defendants made

22  regarding the Thermofight product and found that it is "misleading, deceptive, and *likely* to

23  channel people" to purchase Thermofight in lieu of medically proven weight loss therapies.

24  (Doc. No. 22-3 at ¶ 26) (emphasis added).  Professor Wong further reasons that this "likely"

25  channeling away from effective weight loss therapies "*may* result in the continued chronic

26  illnesses associated with obesity."  (*Id.*) (emphasis added).  Without any further evidence or

27  reasoning, Professor Wong also asserts that the "same issues apply to" *all* of defendants' weight

28  control products.  (*Id.*)  Professor Wong does not declare that plaintiff continues to be channeled

8

away (or that she ever was) from more effective products by defendants or that she suffers from a chronic illness.  His opinion is merely a series of possible results, each contingent on the one that came before it, that do not culminate in the showing of a clear concrete injury or harm.  This amounts to speculation, and it is insufficient to constitute a showing of a concrete irreparable harm.  *See Caribbean Marine*, 844 F.2d at 675–76 (finding that, where multiple contingencies must occur before an injury becomes concrete, the injury is "too speculative to constitute an irreparable harm justifying injunctive relief").  The assertions in plaintiff's other supporting declarations are also highly speculative.  (*See, e.g.*, Doc. No. 22-4 at ¶ 10 (Professor London admitting that harm from defendants' weight control products are "unmeasured" and "unknown" and concluding that such "products must be viewed as *potentially* more harmful than beneficial," but not attesting that plaintiff suffered or will suffer any harms) (emphasis added); Doc. No. 22-5 at ¶¶ 8–9, 12 (author FitzPatrick discussing MLM schemes and concluding that they can cause a "soul-injuries" that "*may* include divorces, alienation from family, lost friendships, incapacity to work, disillusionment, bankruptcies, addictions and even suicides," but notably not attesting that plaintiff has suffered or will suffer any of these injuries herself) (emphasis added).)

Similarly, the other evidence relied upon by plaintiff is also insufficient to demonstrate irreparable harm.  For instance, plaintiff's reference to an FDA webpage and enforcement letters do not concern the weight loss products sold by defendants and thus do not constitute evidence that *defendants'* products share any of the generic risks listed by the FDA.  *See Caribbean Marine*, 844 F.2d at 675 (finding evidence of assault on foreign fishing vessels was "too remote and speculative" to support concerned harms of increased liability from intentional torts on American fishing vessels).  Nor can plaintiff's concern regarding the exculpatory contract provisions in defendants' Terms of Use, including its arbitration clause, constitute irreparable harm because this court has already ruled that plaintiff is not bound by that contract.  (*See* Doc. No. 38.)  Even if the court were to consider the allegations of plaintiff's FAC (which are not evidence), plaintiff has only alleged that she suffered a past monetary injury—i.e., defendants' allegedly unlawful auto-billing, which plaintiff was able to successfully cancel—and does not claim that she suffered any other injury.  (Doc. No. 17 at ¶ 205); *see Goldie's Bookstore*, 739

1    F.2d at 471 ("Mere financial injury . . . will not constitute irreparable harm if adequate

2    compensatory relief will be available in the course of litigation.").  Nothing in the allegations of

3    the FAC suggests, nor does any of the evidence before the court show, that plaintiff faces

4    anything other than a past economic injury.

5          Moreover, plaintiff's novel attempt to characterize her "'substantive right' to 'protection

6    from fraud, deceit and unlawful conduct'" under California's UCL as an "intangible [irreparable]

7    injury" is unpersuasive because the cases cited by plaintiff do not support that proposition.  (Doc.

8    Nos. 22-1 at 26; 30 at 13) (quoting *In re Tobacco II*, 46 Cal. 4th 298, 324 (2009)).  The California

9    Supreme Court in *In re Tobacco II* addressed statutory standing requirements under the UCL

10   when a plaintiff is seeking class certification following enactment of a voter-passed ballot

11   initiative.  *See* 46 Cal. 4th at 324 ("Applying Proposition 64's standing requirements to the class

12   representative but not the absent class members enlarges neither the substantive rights nor the

13   remedies of the class.").  That decision has no bearing on whether plaintiff's "substantive right"

14   under California's UCL amounts to an intangible injury for purposes of demonstrating irreparable

15   harm under the legal standard governing the issuance of preliminary injunctive relief in federal

16   court.  Ultimately, plaintiff merely argues that a state court's pronouncement of the general

17   protection afforded by California's UCL is tantamount to a specific showing that an intangible

18   injury is ongoing in this case.  The court rejects this argument because it is unsupported and

19   unpersuasive.[4]  *Cf. A. O. v. Cuccinelli*, 457 F. Supp. 3d 777, 795 (N.D. Cal. 2020) (finding that

20   Special Juvenile Immigrant (SIJ) status applicants who were denied SIJ status under the United

21   States Citizenship and Immigration Services' (USCIS) new policy position resulted in intangible

22   irreparable harms including, ineligibility for SIJ benefits such as green cards and federally-funded

23

---

24   [4]  Plaintiff also contends that "the Ninth Circuit has affirmed a false advertising injunction" and
     found that it "conferred significant benefits on third parties and also vindicated plaintiffs' right to
25   a 'market free of false advertising.'"  (Doc. No. 30 at 11) (citing *TrafficSchool.com, Inc. v.
     Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011)).  But the decision in *TrafficSchool.com* is
26   inapposite.  In that case the Ninth Circuit merely discussed the incidental public benefits of the
     granting of a permanent injunction, issued following a federal Lanham Act trial, as a basis for its
27   finding that the district court abused its discretion in denying attorneys' fees.  *See*
     *TrafficSchool.com*, 653 F.3d at 832.

28

1  education, possibility of removal from the United States, and fear arising from the uncertainty of

2  their SIJ applications).

3          At bottom, plaintiff cites no authority for the proposition that a general right of the public

4  to be protected from "fraud, deceit, and unlawful conduct" amounts to an irreparable harm for

5  purposes of determining whether preliminary injunctive relief should be granted.[5] *Cf. Zepeda v.*

6  *U.S. I.N.S.*, 753 F.2d 719, 727–28 & n.1 (9th Cir. 1983) (explaining that the scope of a

7  preliminary injunction is limited to the parties in the action).  Nor has plaintiff explained how

8  issuing the injunctive relief she requests—which would dramatically upend defendants'

9  business—is necessary to preserve the *status quo* before a trial on the merits in this action.  *See*

10  *id.* at 728 n.1 ("A preliminary injunction can only be employed for the 'limited purpose' of

11  maintaining the *status quo*.").  In fact, plaintiff waited over three and a half months after filing

12  this lawsuit before bringing the pending motion, which also "weighs against a claim of irreparable

13  injury." *U.S. ex rel. Rogers v. Cnty. of Sacramento*, No. 2:03-cv-01658-LKK-DAD, 2006 WL

14  192671, at *3 (E.D. Cal. Jan. 24, 2006) (citing *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d

15  1374, 1377 (9th Cir. 1985)).  In sum, based on the evidence before the court in support of the

16  pending motion, plaintiff has failed to make an adequate showing that she is likely to face

17  immediate and irreparable harm requiring the granting of preliminary injunctive relief to preserve

18  the *status quo*. *See Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 937–38 (N.D. Cal. 2009) ("Because

19  [plaintiff] fails to meet the burden of presenting evidence of actual injury to support his claims of

20  irreparable injury and speculative losses, the Court cannot, on this record, grant a preliminary

21  injunction.").

22  /////

23  /////

24

25  [5]  Plaintiff does cite one out-of-circuit decision in which a preliminary injunction was issued in a government enforcement action involving false advertising of a weight loss drug. *See United*

26  *States v. Wilson Williams, Inc.*, 277 F.2d 535, 536 (2d Cir. 1960).  The two-page *per curiam* decision in that case found that the evidence presented "overwhelmingly established the

27  government's claims" and showed "that the defendants had limited resources" to issue refunds to customers. *Id.* at 536–37.  There is no comparable evidence of irreparable harm here and, even if

28  there were, *Wilson Williams* is not binding on this district court.

Aside from asserting that the evidence shows that there is imminent irreparable harm, plaintiff also contends that because she is seeking "public injunctive relief," there is ongoing irreparable harm that warrants a preliminary injunction.[6]  (Doc. No. 30 at 8–14.)  This argument raises several difficult questions including whether the specific relief plaintiff is seeking constitutes public injunctive relief, whether public injunctive relief is available on a preliminary basis, or whether a request for public injunctive relief modifies the requirement that a plaintiff must demonstrate irreparable harm to obtain such relief.  However, the court need not address these issues in resolving the pending motion because it finds that plaintiff lacks standing to seek public injunctive relief.[7]

It is true, as plaintiff points out, the Ninth Circuit has held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase[.]"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018)  Nonetheless, one's standing to do so depends on whether "the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm."  *Id.*  In *Davidson*, the plaintiff sued a manufacturer of personal cleansing wipes, alleging that the manufacturer falsely advertised the wipes as "flushable" in violation of the UCL, FAL, and CLRA when they were not, in fact, flushable.  *Id.* at 961.  Critical to the court's holding that plaintiff had standing to seek

---

[6]  According to the Ninth Circuit's interpretation of the California Supreme Court's decision in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), public injunctive relief is "limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party."  *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542–43 (9th Cir. 2021).  "The paradigmatic example would be the sort of injunctive relief sought in *McGill* itself, where the plaintiff sought an injunction against the use of false advertising to promote a credit protection plan."  *Id.*

[7]  As a result, the court need not address the non-binding district court decisions or inapplicable state court decisions cited in plaintiff's moving and reply papers regarding the issue of public injunctive relief.  (*See* Doc. Nos. 22-1 at 24–26 (arguing a preliminary injunction will prevent irreparable harm to the classes and the general public); 30 at 8–10 (arguing that plaintiff seeks public injunctive relief), 10–13 (arguing that seeking public injunctive relief establishes irreparable harm).

1   public injunctive relief were allegations in the complaint that plaintiff

2
> "continues to desire to purchase wipes that are suitable for disposal
3
> in a household toilet"; "would purchase truly flushable wipes
> manufactured by [Kimberly–Clark] if it were possible"; "regularly
> visits stores . . . where [Kimberly–Clark's] 'flushable' wipes are
4
> sold"; and is continually presented with Kimberly–Clark's flushable
> wipes packaging but has "no way of determining whether the
5
> representation 'flushable' is in fact true."

6   *Id.* at 970–71.  Here, plaintiff does not assert any comparable allegations in her FAC such that she

7   continues to desire purchasing safe and effective weight loss products from defendants and would

8   in fact purchase such products in the future if they were available.  Because plaintiff "does not

9   allege the threat of future harm that *Davidson* held is required for Article III standing in a case

10  seeking public injunctive relief," plaintiff's argument that there is ongoing irreparable harm to the

11  general public warranting the granting of a preliminary injunction necessarily fails.  *See Stover v.*

12  *Experian Holdings, Inc.*, 978 F.3d 1082, 1087 (9th Cir. 2020) (finding that the lack of allegations

13  comparable to those in *Davidson* meant plaintiff could not seek public injunctive relief and could

14  not invoke the "*McGill* rule" as a basis to invalidate an arbitration agreement).

15        Alternatively, plaintiff also argues that she is not required to make a showing of

16  irreparable harm when an injunction is sought to prevent a violation of a federal or a California

17  statute that specifically provides for injunctive relief.  (Doc. No. 30 at 12 (citing cases).)

18  Plaintiff's argument in this regard is unpersuasive for two reasons.  First, after initially citing

19  *Winter* as setting the applicable legal standard governing the issuance of a preliminary injunction,

20  plaintiff suggests that California law controls as to the applicable legal standard.  (*See id.* (citing

21  *California Assn. of Dispensing Opticians v. Pearle Vision Ctr., Inc.*, 143 Cal. App. 3d 419, 434,

22  (1983)).  But plaintiff is incorrect; federal law controls in that regard.  *See Masters v. Avanir*

23  *Pharms., Inc.*, 996 F. Supp. 2d 872, 879 n.3 (C.D. Cal. 2014) ("Because the standard for issuing a

24  preliminary injunction is procedural, a federal court is bound to apply the federal standard even if

25  the underlying claims arise under state substantive law.").  Second, although a violation of federal

26  law can lead to a presumption of irreparable harm, "courts must analyze each statute separately to

27  determine whether Congress intended to make 'a major departure from the long tradition of

28  equity practice' and create a statutory presumption or categorical rule for the issuance of

injunctive relief." *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 n.2 (9th Cir. 2011) (quoting *eBay*, 547 U.S. at 391–92)); *see also Herb Reed*, 736 F.3d at 1249 (finding that there is no presumption of irreparable harm in a trademark infringement action when the plaintiff makes a showing of a likelihood of success on the merits).

Assuming without deciding that the court can apply the framework under federal law to a state statute, a close review of the text of the UCL, FAL, and CLRA does not reveal any indication that they were intended to create a statutory presumption or categorical rule for issuing injunctive relief when violations are established. *Compare* Cal. Bus. Prof. Code § 17203 ("The court may make such orders or judgments . . . as may be necessary to prevent . . . unfair competition[.]"), *and id.* § 17535 ("Any person, corporation, . . . which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction."), *and* Cal. Civ. Code § 1780(a)(2) ("Any consumer who suffers any damage as a result of . . . a method, act, or practice declared [unlawful under the CLRA] may bring an action . . . [for] [a]n order enjoining the methods, acts, or practices.") *with eBay*, 547 U.S. at 391–93 (finding no indication in the Patent Act that Congress intended courts to depart from normal four-factor test for permanent injunction where statute provided that "injunctions 'may' issue").

Accordingly, the court finds that plaintiff has not carried her burden of demonstrating that she faces imminent irreparable harm. To the extent plaintiff argues that seeking public injunctive relief could remedy this deficiency, it is irrelevant because plaintiff lacks standing to seek such relief. Because plaintiff has not made the required showing of irreparable harm, a preliminary injunction cannot issue. *All. for the Wild Rockies*, 632 F.3d at 1135 (describing that after *Winter*, plaintiffs must make a showing on all four prongs of the preliminary injunction analysis.) As a result, the court need not address plaintiffs' showing with respect to her likelihood of success on the merits, the balance of equities, and whether the granting of an injunction is in the public interest. *See Singleton v. Kernan*, No. 3:16-cv-02462-BAS-NLS, 2017 WL 4922849, at *3 (S.D. Cal. Oct. 31, 2017) ("Where a plaintiff fails to demonstrate a likelihood of irreparable harm without preliminary relief, the court need not address the remaining elements of the preliminary injunction standard."), *aff'd*, 730 F. App'x 540 (9th Cir. 2018).

Because the court will deny plaintiff's request for preliminary injunctive relief, the court will also deny plaintiff's request to provisionally certify two putative classes without addressing Rule 23's requirements.  *See Criswell v. Boudreaux*, No. 1:20-cv-01048-DAD-SAB, 2020 WL 7646405, at *12–13 (E.D. Cal. Dec. 23, 2020) (denying a request for provisional class certification where a motion for a preliminary injunction was also denied).  In doing so, the court does not suggest that plaintiff has failed to meet the Rule 23 class certification requirements with regard to the putative classes alleged in her FAC.

## CONCLUSION

For the reasons explained above, plaintiff's motion for a preliminary injunction and provisional class certification (Doc. No. 22) is denied.

IT IS SO ORDERED.

Dated:   **June 21, 2022**

UNITED STATES DISTRICT JUDGE