**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:     (619) 798-2006
Facsimile:      (619) 343-2789

**Counsel for Plaintiff**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AILEEN BROOKS, on behalf of herself and all others similarly situated, | Case No: 1:21-cv-1341-ADA-CDB<br>Pleading Type: Class Action |
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |
| v. | |
| IT WORKS MARKETING, INC., IT WORKS! GLOBAL, INC., MARK PENTECOST, and PAUL NASSIF, | Date: October 24, 2022<br>Time: 1:30 p.m.<br>Judge: The Honorable Ana L. de Alba<br>[No oral argument requested] |
| Defendants. | Action Filed: September 3, 2021 |

**TABLE OF CONTENTS**

I.   This Motion Is Not "Procedurally Barred." ................................................................. 1

II.  Plaintiff Has Standing to Challenge the Terms of Use. ............................................... 2

III. The Terms of Use Are Invalid. ..................................................................................... 3

IV.  Plaintiff May Challenge the Loyal Customer Agreement. .......................................... 4

V.   California's Automatic Renewal Law Applies Here. ................................................... 6

VI.  The Automatic Renewal Claim Involves No Disputed Facts ...................................... 8

VII. Plaintiff's Labeling Claim Does Not Involve Factual Issues ....................................... 9

VIII. It Works!' Affirmative Defenses Fail as a Matter of Law. ........................................ 10

i

*Brooks v. It Works Marketing, Inc. et al.*, Case No: 1:21-cv-1341-ADA-CDB
REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

## I. THIS MOTION IS NOT "PROCEDURALLY BARRED."

Corporate Defendants' contend this motion is premature because Rule 12(c) motions must be filed after "the pleadings are closed" and individual defendants Pentecost and Nassif have not yet answered. Opp. at 4. Rule 12(c), however, does not define "pleadings are closed" as requiring every defendant to answer, and while some district courts have interpreted it that way, others note such construction could have absurd results. For example, a plaintiff could never serve a secondary defendant, who would then never answer. In so doing, all 12(c) motions would be "barred" as the pleadings would never be closed.

In reality, the Court is the master of its calendar, and the "pleadings are closed" as they will ever be for purposes of this motion. The motion solely targets the two defendants who answered. Even those courts who view "pleadings are closed" as meaning "every single defendant has answered" still acknowledge discretion to hear "premature" motions. Thus, "some courts, while citing the general rule, have found that they have discretion to allow motions for judgment on the pleadings even where not all defendants have filed an answer, where no prejudice to any party would result." *Hupp v. Cty. of San Diego*, 2016 U.S. Dist. LEXIS 157419, at *16 (C.D. Cal. Sep. 27, 2016) (citing *Johnson v. Dodson Pub. Schs*, 463 F. Supp. 2d 1151, 1156 (D. Mont. 2006)) (even if motion "technically was premature," court considered it on its merits because it only involved defendant that had answered); *Noel v. Hall*, 2005 U.S. Dist. LEXIS 45508, at *1-2 (D. Or. 2005) (considering 12(c) motion where one of three defendants had answered because motion did not concern the other two). See also *Thomas & Betts Int'l LLC v. Burndy LLC*, 2015 U.S. Dist. LEXIS 139027, at *5 (W.D. Tenn. Oct. 13, 2015) (courts may "'consider a 12(c) motion even when one of the defendants has not filed an answer.'").

Here, Defendants identify no prejudice from the hearing of this motion. Indeed, it is Plaintiff who would suffer prejudice by delaying resolution of a motion that shows most of the key issues in this case can be resolved based on nothing more than the complaint, answer, documents incorporated by reference, and facts subject to judicial notice. If the arguments in Plaintiff's motion have merit, the scope of discovery will be greatly narrowed, and class certification briefing will be simplified. Further, the Court could simply hold off deciding the motion until after the individual defendants are dismissed from the case, or else forced to answer by the denial of their motion to dismiss. See *Hupp*, 2016 U.S. Dist. LEXIS 157419, at *16 and *Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1142-43 (C.D. Cal. 2015).

1

*Brooks v. It Works Marketing, Inc. et al.*, Case No: 1:21-cv-1341-ADA-CDB
REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

## II. PLAINTIFF HAS STANDING TO CHALLENGE THE TERMS OF USE.

Citing Judge Drozd's order denying Defendants' Motion to Compel Arbitration, It Works contends Brooks has "no standing" to pursue her claim challenging the It Works Terms of Use. Mot. at 5. This argument was flatly rejected in *Garcia v. Cent. Coast Rests., Inc.*, where the defendant argued the plaintiff "lack[ed] standing to seek to challenge the arbitration agreement on behalf of the class" because she had successfully opposed the defendant's motion to compel arbitration. 2022 U.S. Dist. LEXIS 38803, at *12-16 (N.D. Cal. Mar. 4, 2022). The Honorable Richard Seeborg rejected the argument, as

> There are significant differences between a plaintiff who opted out of an arbitration agreement and a plaintiff who has successfully challenged an arbitration agreement. As another court in this district has noted, a plaintiff who opted out of an arbitration agreement is unable to make certain arguments on behalf of the class; in that case, the plaintiff was "unable to credibly make several procedural unconscionability arguments on behalf of unnamed class members, such as that delivery drivers felt compelled to accept the arbitration provisions as a condition of employment or that the opt-out provision was not sufficiently noticeable." *Tan v. Grubhub, Inc.*, No. 15-CV-05128-JSC, 2016 U.S. Dist. LEXIS 186342, 2016 WL 4721439, at *3 (N.D. Cal. July 19, 2016), aff'd sub nom. *Lawson v. Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021). In contrast, Plaintiff has already sought to make an unconscionability argument that would be applicable on a class-wide basis. See Plaintiff's Opposition to Defendant's Motion for Summary Judgment. This Court found that Garcia could disaffirm the contract based on her minority at the time of signing, and did not address her unconscionability argument. Her successful disaffirmation based on her minority does not weaken her other, class-wide arguments that remain unresolved. Thus, the concerns present in cases in which a plaintiff opted out of an agreement are not present here.

*Garcia v. Cent. Coast Rests., Inc.,* 2022 U.S. Dist. LEXIS 38803, at *13-14 (N.D. Cal. Mar. 4, 2022). Here, in denying Defendants' Motion to Compel Arbitration, Judge Drozd held

> defendants have failed to show that a valid contract containing an arbitration provision was formed between plaintiff and defendants. Likewise, defendants have not made an adequate showing that the It Works! website provides reasonably conspicuous notice of the Terms of Use or that plaintiff took some action that unambiguously manifested her assent to the Terms of Use.

Dkt. 38 at 14.

The fact that Judge Drozd denied arbitration does not change the fact that Defendants still believe their arbitration agreement is a valid contract. Indeed, Defendants (1) filed and arbitration demand, (2) moved to compel arbitration, and (3) argued in their Opposition to Plaintiff's Motion for Preliminary Injunction that "the Terms of Use are valid and enforceable." Dkt. 29 at 15.

To "establish standing under the UCL," a "private party must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice . . . that is the gravamen of

2

*Brooks v. It Works Marketing, Inc. et al.*, Case No: 1:21-cv-1341-ADA-CDB
REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

the claim.'" *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 916 (2016) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011)). See also *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 643 (2009) (standing satisfied because defendant "sought to enforce any unconscionable term against plaintiffs"); *Lee v. Chase Manhattan Bank*, 2008 U.S. Dist. LEXIS 25007, at *16 (N.D. Cal. Mar. 14, 2008) (standing satisfied where contract violated Bus. & Prof. Code § 1770(a)(19) if the plaintiff "alleged facts demonstrating that they were personally harmed" by the "defendants' alleged statutory violations").

### III.   THE TERMS OF USE ARE INVALID.

Defendants' contention that their Terms of Use are "valid and enforceable," Opp. at 5, fails. First, Defendants' opposition *entirely* ignores their absurd and oppressive contractual prohibition on injunctive relief. See Mot. at 1-2. A "law established for a public reason cannot be contravened by a private agreement." Cal. Civ. Code § 3513. Further, in California, "claims for public injunctive relief cannot be arbitrated." *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 750 (2019). Yet Defendants' contract provides injunctive relief cannot be sought under any circumstance, in court or in arbitration. Defendants also decline to provide any defense for their absurd and oppressive contract term that caps damages at either $0 or $100, even in cases involving "DEATH OR PERSONAL INJURY." See Mot. at 3. California's "UCL, through its purpose and provisions, evidences a fundamental policy of remedying injuries to the consumer." *Vrugtman v. It's Just Lunch Int'l Llc*, 2021 U.S. Dist. LEXIS 209397, at *25 (C.D. Cal. Sep. 24, 2021). The California "Supreme Court has made clear that the 'object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.'" *Espejo v. The Copley Press, Inc.*, 13 Cal. App. 5th 329, 368 (2017) (quoting *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 697 (2006)).

Plaintiff brings claims under California's UCL, which "restore[s] the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Espejo*, 13 Cal. App. 5th at 368. The provision limiting recovery to $0 or $100 thus contravenes the UCL's fundamental policy of restitution. However, "a law established for a public reason cannot be contravened by a private agreement." Cal. Civ. Code § 3513. Because this provision contravenes a fundamental public policy, it "is invalid and unenforceable under California law." *McGill v. CitiBank, N.A*, 2 Cal. 5th 945, 961 (2017). Thus, Plaintiff is entitled to partial judgment on the pleadings in her challenge to the contract's damages cap.

3

*Brooks v. It Works Marketing, Inc. et al.*, Case No: 1:21-cv-1341-ADA-CDB
REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Third, Defendants' attempt to distinguish *Walter v. Hughes Communs., Inc.*, 682 F. Supp. 2d 1031 (N.D. Cal. 2010), fails. Contrary to Defendants' claim Florida's FDUTPA allows punitive damages,

> FDUPTA's remedies provision, § 501.211(2), does not mention punitive damages, and we have found no cases allowing such damages for an FDUPTA claim. The academic commentary we have located indicates (though summarily) that punitive damages are not recoverable

*Thomas v. Generac Power Sys.*, 2022 U.S. App. LEXIS 25075, at *6 (11th Cir. Sep. 7, 2022). See also *JAWHBS, LLC v. Arevalo*, 2017 U.S. Dist. LEXIS 55899, at *30 (S.D. Fla. Apr. 12, 2017) ("FDUTPA does not provide for punitive damages."); *McNider Marine, LLC v. Cain & Daniels, Inc*., 2019 U.S. Dist. LEXIS 73564, at *9 (M.D. Fla. Apr. 29, 2019) ("[P]unitive damages are not available under FDUTPA.").

Further, Defendants' reliance on *Pulte Home Corp. v. TIG Ins. Co.*, 794 Fed. Appx. 587, 589 (9th Cir. 2019), Opp. at 6, is misplaced. This unpublished case does not involve the UCL, nor the CLRA with its anti-waiver provision, nor the FDUTPA, but rather involved a major home builder suing an insurance company. Courts have consistently held California has a fundamental policy allowing for CLRA punitive damages. In *Vrugtman v. It's Just Lunch Int'l LLC*, the court held "application of Nevada law over the CLRA would preclude Kruzick from recovering punitive damages and contradict CLRA's anti-waiver provision, the Court finds that the NDTPA is contrary to a fundamental policy of California." 2021 U.S. Dist. LEXIS 209397, at *17 (C.D. Cal. Sep. 24, 2021). Likewise, *Am. Online, Inc. v. Superior Court* held the "[e]nforcement of a forum selection clause, which would impair" a consumer's right to seek "punitive damages" "would itself violate important California public policy." 90 Cal. App. 4th 1, 18 (2001). See also *Lloyd v. Navy Fed. Credit Union,* 2018 U.S. Dist. LEXIS 62404, at *16 (S.D. Cal. Apr. 12, 2018) ("Given the CLRA's anti-waiver provision and role as a deterrent and check on public harm, this Court concludes that punitive damages are in fact a 'fundamental' part of the statutory scheme."); *Walter*, 682 F. Supp. 2d at 1041 (same). Because Plaintiff has demonstrated that punitive damages can be awarded under the CLRA, but not the FDUTPA, the Florida choice-of-law provision "is contrary to a fundamental policy of California" and thus unenforceable. *Walter*, 682 F. Supp. 2d at 1038.

IV.  **PLAINTIFF MAY CHALLENGE THE LOYAL CUSTOMER AGREEMENT.**

Defendants argue in passing thar Brooks "has no standing to challenge" the Loyal Customer Agreement "because she never visited" the It Works website. Opp. at 1-2. As Defendants acknowledge, Brooks was enrolled in Defendants' auto-billing program prior to cancelling, and Defendants charged her

4

*Brooks v. It Works Marketing, Inc. et al.*, Case No: 1:21-cv-1341-ADA-CDB
REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

credit card. Opp. at 2.

> Under the UCL and the ARL, a private individual cannot bring a claim unless she has suffered injury in fact and has lost money or property as a result of the alleged violation. Thus, to establish statutory standing, a plaintiff must allege (1) loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) that economic injury was the result of, i.e., *caused by*, the unfair business practice or ARL violation that is the gravamen of the claim.

*Kissel v. Code 42 Software, Inc.*, 2016 U.S. Dist. LEXIS 184368, at *20-21 (C.D. Cal. Apr. 14, 2016)(cleaned up, emphasis in original). In *Kissel*, the court rejected the argument that there was not causation between the ARL violation and the economic injury, holding the plaintiff

> adequately alleges causation. She alleges that she purchased a subscription plan from Defendant during the Class Period but that Defendant failed to (a) present the automatic renewal offer terms in a clear and conspicuous manner, (b) obtain affirmative consent before fulfilling the subscription, or (c) provide an acknowledgment as required by law. (FAC ¶¶ 7, 19-24.) Kissel then alleges that Defendant charged and continues to charge Kissel without having first complied with the ARL.

*Id.* at *23-24. Similarly, in *Ingall v. Spotify*, the court rejected the argument that a UCL and ARL claim "must meet a more stringent 'actual reliance' standard, which would require a showing that he read and relied upon alleged misrepresentations," holding

> Contrary to Spotify's contention, Ingalls' claims, which arise under the unlawful prong of Section 17200, do not sound in misrepresentation. Rather, they are predicated on a prophylactic law requiring businesses to present disclosures in a conspicuous manner. See Cal. Bus. & Prof. Code Section 17602(a)(1). Nowhere does Ingalls allege that he was affirmatively misled by the content of the disclosures, but rather argues that because they were inconspicuous, he missed them altogether. Because his claim does not sound in misrepresentation, "but for" causation applies.

2017 U.S. Dist. LEXIS 110817, at *9 (N.D. Cal. July 17, 2017). See also *McKee v. Audible, Inc.*, 2018 U.S. Dist. LEXIS 242217, at *53 (C.D. Cal. Mar. 12, 2018) ("As to Defendant's standing argument, the Court would again find that McKee's allegation that he would not have signed up for Audible and/or continued to pay monthly fees but for the CAPRL violations is sufficient to establish standing.").

Here, as in *Kissel*, Brooks has standing because she alleges during her purchase Defendants failed to (a) present the automatic renewal offer terms in a clear and conspicuous manner, (b) obtain affirmative consent before fulfilling the subscription, or (c) provide an acknowledgment as required by law. See FAC ¶¶ 199-218. Further, Brooks specifically alleges that when she "purchased Thermofight, she was unaware that she would be subject to Defendants' unlawful auto-renewal practices" and had she "known that Defendants would utilize these unfair and unlawful autorenewal practices to extract additional money from her, she would not have purchased Thermofight." FAC ¶¶ 263-64. Courts have repeatedly found the

5

*Brooks v. It Works Marketing, Inc. et al.*, Case No: 1:21-cv-1341-ADA-CDB
Reply in Support of Motion for Partial Judgment on the Pleadings

standing element satisfied in such circumstances. Ultimately, standing is easily resolved here on the pleadings because it does not require proof of anything, but rather involves whether Brooks has made allegations in her complaint sufficient to invoke the Court's jurisdiction.

### V. CALIFORNIA'S AUTOMATIC RENEWAL LAW APPLIES HERE.

Defendants' assertion that the "It Works!' Loyal Customer Agreement is not a subscription service that is automatically renewed at the end of a definite term," Opp. at 8, fails. First, while Defendants note that consumers are presented with the option of paying a $50 "membership fee," rather than enrolling in Defendants' unlawful auto-billing program, *Brooks does not seek to represent consumers who were not enrolled in auto-billing*. The Auto-Billing Class is defined as:

> All individuals Defendants charged under their automatic renewal program in the United States from September 1, 2017 to the present.

FAC ¶ 267. Thus, Defendants' assertion that "customers can choose to enroll as a Loyal Customer by either paying a $50 membership fee and placing a single order for a product or making a pre-payment for their next three purchases," Opp. at 8, is irrelevant.

Further, Defendants' assertion that customers "pre-pay" for "their next three purchases" is demonstrably false and belied by the text of the LCA, which provides:

- "You can make a three (3) month minimum commitment to a **monthly auto-shipment order**"
- "The Loyal Customer may cancel the autoship program at any time **after the three (3) month commitment has been fulfilled**."
- "The autoshipment will continue to run every month until the Loyal Customer contacts It Works! To change or end their autoshipment."
- "All autoshipment cancellation requests must be completed at least two (2) business days prior to the autoshipment process date."

FAC, Ex. 8. Thus consumers like plaintiff are by default enrolled into a monthly automatic shipment and credit card charge, and even if they prepay for three months, they are still billed monthly afterward. The only real distinction here with the classic case is Defendants added an additional oppressive term that if a customer cancels the automatic renewal plan before three monthly shipments, he will also face a $50 penalty which Defendants euphemistically label a "membership fee."

Next, Defendants argue that "Plaintiff has failed to show the 'definite term' contained in the Loyal Customer Agreement which is a requisite for a purchasing agreement to be considered a 'automatic

6

*Brooks v. It Works Marketing, Inc. et al.*, Case No: 1:21-cv-1341-ADA-CDB
REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

renewal' nor can she—no such definite term exists." Opp. at 8. Again, a review of the document illustrates the futility of the argument. Under the Loyal Customer Agreement, consumers electing the "autoshipment" option must "**make a three (3) consecutive month minimum commitment to a monthly auto-shipment order**." FAC, Ex. 8 at 1 (emphasis added). Further, the "**autoshipment will continue to run every month until the Loyal Customer contacts IT Works! to change or end their autoshipment**." *Id.* (emphasis added). "Loyal Customers who cancel their autoshipment prior to completing the three (3) month minimum commitment will be charged a $50 membership fee." *Id.*

The LCA thus requires customers "to pay the $50 Membership Fee upfront, pay for three-months' worth of ineffective products, or pay the $50 Membership Fee to get out of their three-month commitment." FAC ¶ 190 and Ex. 8. If a consumer receives an ineffective product from It Works! while enrolled in an auto-shipment program and wishes to cancel future shipments prior to completing the "three month minimum commitment," the consumer is charged a $50 Membership Fee. FAC ¶ 188-89.

This scheme is "a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." B&P § 17601(a). Such plans must have "the following clear and conspicuous disclosures":

(1) That the subscription or purchasing agreement will continue until the consumer cancels.
(2) The description of the cancellation policy that applies to the offer.
(3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.
(4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.
(5) The minimum purchase obligation, if any.

B&P § 17601(b). "'Clear and conspicuous' or 'clearly and conspicuously' means"

in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language. In the case of an audio disclosure, "clear and conspicuous" and "clearly and conspicuously" means in a volume and cadence sufficient to be readily audible and understandable.

B&P § 17601(c). "It is unlawful for any business that makes an automatic renewal offer or continuous service offer to a consumer in this state to do any of the following":

7

*Brooks v. It Works Marketing, Inc. et al.*, Case No: 1:21-cv-1341-ADA-CDB
REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

> (1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

B&P § 17602(a)(1). Here, the terms appear in the same font size and typeface as the rest of document. FAC ¶ 210 and Ex. 8 (LCA). The provisions of the LCA "relating to Defendants' auto-billing practices, . . . are not set forth in all capital letters, nor are they bolded." FAC ¶ 213. The Corporate Defendants do not deny this allegation, nor could they, as a review of the Loyal Customer Agreement confirms its accuracy. See Defendants' Answer ¶ 213 (the LCA "speaks for itself."). Thus, the "auto-renewal" terms in the LCA violate B&P § 17602(a)(1) because they are not "clearly and conspicuously" as required by B&P § 17601(c). FAC ¶¶ 207-213 and Ex. 8.

## VI. THE AUTOMATIC RENEWAL CLAIM INVOLVES NO DISPUTED FACTS.

Defendants note that they have "denied Plaintiff's allegations regarding her alleged inability to obtain a refund of certain fees related to the Loyal Customer Agreement." Opp. at 8. But that claim goes to remedies, which is not the subject of this motion. Rather, the question in this motion is the facial legality of the LCA, which is attached to the FAC and incorporated by reference into the FAC. The agreement also resides on the It Works webpage and Defendants have already, in their failed motion to compel arbitration, conceded its authenticity. Dkt. 14-4, Seat Decl. ¶ 4, Ex. 2. See also Dkt. 44, Answer ¶ 187 (The LCA "speaks for itself."). Defendants' assertion that the "question of whether certain contractual disclosures are 'clear and conspicuous' is fact-intensive," Opp. at 9, fails because the terms are defined unambiguously in the statute, as:

> larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language.

B&P § 17601(c). Defendants' automatic renewal section is plainly not in "contrasting type, font, or color" or "set off" because the typeface is the same as the rest of the contract. "'Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.'" *Brown v. Cty. of Solano*, 2022 U.S. Dist. LEXIS 29287, at *2 (E.D. Cal. Feb. 17, 2022) (citation omitted). There's no issue of material fact to be resolved on the question of whether the LCA violates B&P § 17602(a)(1).

8

*Brooks v. It Works Marketing, Inc. et al.*, Case No: 1:21-cv-1341-ADA-CDB
REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

## VII. PLAINTIFF'S LABELING CLAIM DOES NOT INVOLVE FACTUAL ISSUES.

Defendants further argue that "the Court should not take judicial notice of reasonably disputed facts contained within" FDA warning letters. Opp. at 9 n.1. But Defendants fail to identify any "reasonably disputed facts" contained within the warning letters. Rather, it is the FDA's *legal conclusions* that specific miracle weight loss claims identical to Defendants' are illegal new drug claims. in prior cases. An "adjudicative fact may be judicially noticed if it is 'not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Allergan United States*, 2017 U.S. Dist. LEXIS 223117, at *9 (C.D. Cal. Nov. 14, 2017) (quoting Fed. R. Evid. 201(b)). "Documents published on government-run websites are proper for judicial notice given their reliability." *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 642 (N.D. Cal. 2021) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). Courts consistently take "judicial notice" of "public document[s] available on the FDA website," as they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Funke v. Sorin Grp. USA, Inc.*, 147 F. Supp. 3d 1017, 1023 n.1 (C.D. Cal. 2015) (citing *Houston v. Medtronic, Inc.*, 957 F. Supp. 2d 1166, 1170 n.1 (C.D. Cal. 2013) and Fed. R. Evid. 201(b)). In *Branca v. Bai Brands, Ltd. Liab. Co.*, the court took judicial notice of FDA warning letters which were "publicly available on the FDA's website." 2019 U.S. Dist. LEXIS 37105, at *53-54 (S.D. Cal. Mar. 7, 2019). In *Eidmann v. Walgreen Co.*, the court took judicial notice of "FDA webpages," as they "were published to the FDA website" and "neither party contest[ed] the authenticity of the website source." 522 F. Supp. 3d 634, 642 (N.D. Cal. 2021). Likewise, in *Soja v. Medtronic, Inc.*, the court took judicial notice of "information from the FDA's online premarket approval database." 2019 U.S. Dist. LEXIS 95557, at *3-4 (E.D. Cal. June 6, 2019).

Here, the FDA warning letters and the FDA's approved drug web database search results are proper subjects for judicial notice, as they are of "public document[s] available on the FDA website" which are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Funke*, 147 F. Supp. 3d at 1023 n.1.

It Works also urges the Court to deny Plaintiff's motion because it "denies that any of its products are 'drugs' and further denies Plaintiff's allegations that Thermofight is in any way misbranded or in violation

of FDA regulations." Opp. at 9. But Defendants' don't dispute the content of their labels, and it is the Court that determines if they are unapproved drugs. Defendants repeatedly concede this in their Answer, stating that whether the products are "drugs" or "misbranded" are "legal argument[s] and/or conclusion[s]," not disputed facts. Dkt. 44, Answer ¶¶ 135, 137, 175-76, 178, 181, 266, 269-70.

## VIII. IT WORKS!' AFFIRMATIVE DEFENSES FAIL AS A MATTER OF LAW.

Plaintiff's motion details why each of Defendants' "Affirmative Defenses" are legally defective. Mot. at 11-20. Defendants mischaracterize Plaintiff's argument, claiming Plaintiff "argues at length that It Works! has not sufficiently pled its affirmative defenses." Opp. at 10. However, as set forth in detail in Plaintiff's motion, the vast majority of the pleaded affirmative defenses are not actually affirmative defenses, but denials of Plaintiff's allegations. Others fail as a matter of law and/or have no possible application to the claims. Five of the twenty defenses are simply verbatim duplicates of each other. Plaintiff does not argue, as Defendants contend, that the affirmative defenses are insufficiently pleaded, but rather that they are legally defective and fail as a matter of law.

Defendants' contention that a "motion for judgment on the pleadings is not the proper vehicle for Plaintiff to challenge the substance of It Works!' affirmative defenses," Opp. at 10, also fails. "'[W]here affirmative defenses raise only questions of law, such affirmative defenses do not preclude judgment on the pleadings.'" *RLI Ins. Co. v. City of Visalia,* 297 F. Supp. 3d 1038, 1056 (E.D. Cal. 2018) (citing *Unite Here Local 19 v. Picayune Rancheria of Chukchansi Indians*, 101 F. Supp. 3d 929, 934 (E.D. Cal. 2015).

Moreover, Courts routinely strike or overrule legally defective affirmative defenses in ruling on a motion for judgment on the pleadings. See *Silva v. B&G Foods, Inc*., 2021 U.S. Dist. LEXIS 137792, at *8 (N.D. Cal. July 23, 2021) (granting judgment on the pleadings for plaintiff on defective affirmative defenses); *FTC v. LendingClub Corp*., 2020 U.S. Dist. LEXIS 95703, at *89-90 (N.D. Cal. June 1, 2020) (same); *Senne v. Kan. City Royals Baseball Corp*., 2022 U.S. Dist. LEXIS 45932, at *93 (N.D. Cal. Mar. 10, 2022) (same); *Winns v. Exela Enter. Sols., Inc*., 2021 U.S. Dist. LEXIS 230412, at *6 (N.D. Cal. Dec. 1, 2021) (same).

DATED: October 10, 2022                    Respectfully Submitted,

                                           s/ Gregory S. Weston

                                           **Counsel for Plaintiff**
10

*Brooks v. It Works Marketing, Inc. et al.*, Case No: 1:21-cv-1341-ADA-CDB
REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS